UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

---

Renata Bozek,

        Plaintiff,

v.                                  Case No. 15-cv-00010

Wal-Mart Stores, Inc.,                  Judge: John W. Darrah

        Defendant.                    Magistrate Judge: Daniel G. Martin

---

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Plaintiff Renata Bozek ("Bozek"), by and through her attorneys, submits this Response Opposing Defendant Wal-Mart Stores, Inc.'s ("Wal-Mart") Motion for Summary Judgment.

### INTRODUCTION

Along with over 1.5 million women, Bozek became part of the nationwide class action *Dukes v. Wal-Mart* after Betty Dukes and other women courageously came forward to oppose discriminatory treatment at the largest retailer in the world. The *Dukes* plaintiffs set forth eerily similar complaints of an organization where women are less valued, irrespective of their positive performance, qualifications, and aspirations to advance. Indeed, the *Dukes* Court acknowledged that the plaintiffs demonstrated that "women working in Wal-Mart stores are paid less than men in every region, that pay disparities exist in most job categories . . ., and that the higher one looks in the organization, the lower the percentage of women." 222 F.R.D. 137, 155 (N.D. Cal. 2004). Bozek was no exception. She was paid less than male employees who held the same position, and the promotions for which she applied were given to less-qualified men. Wal-Mart does not provide any legitimate business reason for the disparities because, in actuality, there is none.

Ultimately, the Supreme Court rejected the *Dukes* class based on Rule 23 criteria, not on the merits of the case. While disappointed with this result, Bozek remains undeterred and is now before this Court in her individual capacity to finally hold Wal-Mart accountable for its discriminatory conduct. Because a reasonable jury could find that Wal-Mart discriminated against Bozek due to her sex, its Motion for Summary Judgment should be denied.

## STATEMENT OF FACTS[1]

### A. Bozek is Hired at Wal-Mart

Bozek joined Wal-Mart in 1992 for what would become a nearly 20-year career. (DF ¶¶ 7, 64.) She applied for a management role because she had prior supervisory and retail experience: she had been the Deli Manager at Speedway, where she was responsible for the food court and merchandise, and had worked as the coordinator of the graphics department at Auchan's, a corporation comparable to Wal-Mart. (PF ¶¶ 1-2; DF ¶ 6.)

Bozek was first hired into an hourly position in Wal-Mart's jewelry department. (DF ¶¶ 7-8.) For the next eight years, she excelled in each hourly position she held. She was asked to assume greater responsibilities and was swiftly promoted to Jewelry Department Manager. (PF ¶ 3; DF ¶¶ 9-10.) She later managed the Stationary Department, Sporting Goods Department, and worked in the Invoicing and Pharmacy[2] Departments, which gave her a well-rounded knowledge of the store and further honed her management abilities. (DF ¶¶ 10-13.) Bozek was awarded numerous raises in recognition of her strong performance. (PF ¶ 3.) Each of her reviews was above standard and she did not receive any discipline. (*Id.*)

---

[1] Defendant's L.R. 56.1(a)(3) Proposed Statement of Material Facts are cited as "DF ¶ __."
Bozek's L.R. 56.1(b)(3) Statement of Additional Facts are cited as "PF ¶ __."
[2] Bozek earned a certificate at Daley College so she could work as a pharmacy technician. (PF ¶ 4.)

### B. Bozek is Promoted to Management

In 2001, Bozek was promoted to Wal-Mart's Management in Training ("MIT") program which was held at the Bedford Park store (#1938). (DF ¶ 14.) Bozek was told the MIT program would consist of computer-based learning, classroom instruction, and she would be given a manual to study. (DF ¶ 15; PF ¶ 5.)

When the MIT program started, the Bedford Park store was preparing for an extensive inventory process. (PF ¶ 6; DF ¶ 16.) Because Bozek excelled at inventory, she was directed to manage the process instead of attending the MIT classes. (PF ¶ 6.) While the male trainees attended the MIT classes, Bozek was not permitted to participate in the program and was handed the MIT manual to study on her own time. (*Id.*)

Once the inventory process was finished, Bozek was told she had completed the MIT program (even though she had not received any training) and was promoted to Assistant Manager at the Bedford Park store. (PF ¶ 7.) A few months later, she was asked to transfer to overnights. (PF ¶ 8.) Store managers often place their strongest Assistant Managers on the overnight shift, which has increased responsibility because the manager is responsible for managing the entire store rather than just one department. (DF ¶ 20.)

### C. Male Assistant Managers are Paid More for the Same Work

As an Assistant Manager in the Bedford Park store, Bozek earned less than males Manolete Rhem ("Rhem") and Landrus Cole ("Cole"), even though she had the same job title, same responsibilities, and worked at the same store. When she later transferred to the Northlake and Bridgeview stores, she continued to earn less than males who held the same role, including Ike Farmer ("Farmer"), Todd Meldrum ("Meldrum"), and Michael Hilton ("Hilton").

In July 2001, Assistant Manager Rhem earned $1,500.72 per pay period compared to

3

Bozek's $1,269.84. (PF ¶ 9.) Although Bozek entered the MIT program three months after Rhem, she had worked at Wal-Mart eight years longer. (*Id.*) And, in those eight years, she had gained significant experience in various departments throughout the store. (DF ¶¶ 8-13.) When Bozek later learned Rhem received a $2,000 bonus to work on the overnight shift, she approached Store Manager Mark Sanders ("Sanders") to request the same bonus. (PF ¶ 10.) Sanders immediately chastised Bozek, telling her "We don't discuss pay," and refused to acknowledge the disparity.[3] (PF ¶ 10.) Based on Sanders' reaction, Bozek believed she could not further inquire about pay inequities. (*Id.*)

The following year, in May 2002, Bozek worked as an Assistant Manager with Cole. (PF ¶ 12.) Bozek and Cole had the same job number, pay code, and worked in the same department. (*Id.*) They had the same level of education, although Cole did not have a special certificate like Bozek did. (PF ¶ 13.) Bozek had also worked at Wal-Mart four years longer than Cole. (*Id.*; DF ¶¶ 33-34.) However, Cole earned $1,807.70 per pay period while Bozek earned $1,320.63. (PF ¶ 12.) Cole's only retail or management experience was five years of employment at a grocery store—far less than Bozek's experience before, and at, Wal-Mart. (PF ¶¶ 2, 13; DF ¶ 33.)

Bozek moved to be an Assistant Manager in the Northlake store in April 2004, where she continued to earn less than male Assistant Managers. Bozek held the same job title, job code, and pay grade as Farmer and Meldrum, yet Farmer earned $1,662.66 per pay period, Meldrum earned $1,807, and she earned $1,442.15. (PF ¶ 14.) Bozek had more experience than Farmer— she had been an Assistant Manager for nearly a year longer and had worked at Wal-Mart three years longer. (PF ¶ 15.) She also had far better performance history and a discipline-free record, unlike Meldrum, who had just received a second and third written warning for job performance.

---

[3] From 1987 through the early 2000s, Wal-Mart employees were "always told never to discuss each other's pay." (PF ¶ 11.)

4

(*Id.*)

Later that year, Bozek transferred to the Bridgeview store and held the same position as Assistant Manager Hilton. (PF ¶ 16.) Yet Hilton was paid $1,846.14 per pay period while Bozek earned $1,442.13. (*Id.*) Bozek had worked at Wal-Mart three years longer than Hilton, and Hilton had just received a second written warning for violating company policies. (*Id.*)

### D.     Bozek Requests to Transfer to the Photo Department

It was commonly said by male assistant managers and store managers that Wal-Mart "is a boys' world."[4] (PF ¶ 17.) The "boys" often socialized outside of work and excluded the women. (*Id.*) When she worked at the Bedford Park store, Bozek would see Store Manager Sanders go to the bar with his male assistant managers, including Mike Reed, Miguel Rodriguez, Stanley Mucha, and Hilton. (PF ¶ 18.)

While the men socialized, Bozek found herself working 14-hour days for months upon end without a day off. (PF ¶ 19.) She was required to cover the shifts of male managers who did not make it to work. (*Id.*) Her then-Store Manager Tim Stryczek also spoke to and treated her differently than the male employees. (PF ¶ 20.) For example, if he would get mad and throw the can of chewing tobacco spit he carried around with him, he would make Bozek clean up the mess. (*Id.*) After four years of the schedule and treatment, Bozek suffered from immense stress, anxiety, and depression. (PF ¶ 21.) She requested to laterally transfer to Assistant Manager of the Photo Department, which would be less demanding and allow her to stay in management. (*Id.*) Bozek received the position, although her salary was decreased nearly $5,000 as a result of the move. (*Id*; DF ¶ 43.)

While in the photo lab, Bozek was complemented as the best photo manager in the

---

[4] Bozek even heard Daniel Ketcham—Wal-Mart's Rule 30(b)(6) designee in this case—make such statements. (PF ¶ 17.)

5

district. (PF ¶ 22.) But, the position was eliminated six months later. (*Id.*) Bozek approached the Store Manager, head of personnel, and District Manager to ask about other Assistant Manager positions to which she could transfer, but was never interviewed or given any management role. (PF ¶ 23.) Instead, she was demoted to an hourly associate in the Vision Center. (PF ¶ 24.) She was later told she could not stay in the store because she previously had access to the personnel files of the employees who were now her peers. (*Id.*)

### E. Bozek is Denied Promotions for which she is Qualified

Bozek continually tried to promote back to a management or supervisory position. She applied to several management positions in 2007, including as Assistant Manager. (PF ¶ 25.) Her applications were either not reviewed or Wal-Mart claimed she was "Not Ready." (*Id.*) However, even after she had demoted, Bozek's managers had her perform Assistant Manager duties (without a corresponding increase in pay) because she was so capable. (PF ¶ 26.)

In 2008, she applied for one of three Field Project Supervisor positions. (DF ¶ 55.) Wal-Mart hired Kenneth Lawrence and Kristopher McDonald instead. (*Id.*) Unlike Bozek, Lawrence had held only hourly, non-supervisory roles at Wal-Mart, including cashier, sales associate, and in the Tire Lube Express ("TLE") department. (PF ¶ 27.) Lawrence did not have any post-high school education or certificates, and his non-Wal-Mart employment experience consisted of working as a subcontractor for less than six months. (*Id.*; DF ¶ 56.) Conversely, Bozek had retail and management experience before Wal-Mart in addition to a variety of supervisory roles while at Wal-Mart. (PF ¶ 2; DF ¶¶ 10-12.) McDonald similarly did not have any college education or special certificates and had limited employment experience. (PF ¶ 28.) Bozek had worked at Wal-Mart for six years longer than McDonald and had extensive experience. (*Id.*)

Every time Bozek saw the head of personnel and District Manager, she would express her

6

desire to move up in the company. (PF ¶ 29.) Bozek was told they would "look into it" but nothing happened. (*Id.*)

### F. Wal-Mart Enforced Policies Different for Men

Wal-Mart also enforced its promotion and pay policies differently for male employees.

First, it maintained Bozek was ineligible for promotion after working as an Assistant Manager for six months because she did not meet all criteria in its Promotional Guidelines; however, it disregarded that policy for male employee Louis Elvir ("Elvir"). Elvir started at Wal-Mart at age 17 as a cart pusher and entered the MIT program once he turned 18. (PF ¶ 30.) Elvir worked as an Assistant Manager in the Evergreen store for only six months before being promoted to Co-Manager. (*Id.*) He was later promoted to Store Manager after only being in the Romeoville store for six months. (*Id.*) Not only did Elvir lack prior retail or management experience, Wal-Mart was his first job. (PF ¶ 31.)

Wal-Mart also claimed Bozek was ineligible for promotion for a year following each of her coachings, although its Promotion Guidelines do not contain any such requirement. (PF ¶ 32.) The guidelines also do not disqualify demoted employees from promotion. (*Id.*)

Finally, Bozek received a far greater decrease in pay upon transferring to the Photo Lab than men who were involuntarily demoted down two levels of management (from Store Manager to Assistant Manager, bypassing the Co-Manager role). Wal-Mart had discretion to set pay after a demotion. (PF ¶ 32.) Wal-Mart promoted Cole to Store Manager in early 2002, but promptly demoted him to Assistant Manager after a few months due to an integrity issue. (PF ¶ 10.) Despite the significant demotion, Cole's new pay rate was 13 percent higher than his previous Assistant Manager salary. (*Id.*) Additionally, Hilton was involuntary demoted from Store Manager to Assistant Manager, yet earned more than he had as a Co-Manager. (*Id.*; DF ¶ 45.)

7

## ARGUMENT

I. **LEGAL STANDARD**

Summary judgment is not appropriate unless the moving party can establish that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party meets this burden, the non-moving party may produce evidence demonstrating that there is a dispute of material fact to be resolved by the jury. *Id.* The court must construe the evidence—and grant all reasonable inferences—in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). This Circuit "appl[ies] the summary judgment standard with special scrutiny to employment discrimination cases, which often turn on the issues of intent and credibility." *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491 (7th Cir. 2000).

II. **GENUINE ISSUES OF MATERIAL FACT PRECLUDE SUMMARY JUDGMENT ON BOZEK'S CLAIMS**

Bozek alleges that Wal-Mart discriminated against her on the basis of sex in violation of Title VII. Under Title VII, it is unlawful for an employer to discriminate against any individual because of sex. 42 U.S.C. § 2000e-2(a)(1). A plaintiff may establish Title VII discrimination through the direct or indirect method. *Johnson v. Gen. Bd. of Pension & Health Benefits of United Methodist Church*, 733 F.3d 722, 727 (7th Cir. 2013). Under the indirect model, a plaintiff may avoid summary judgment by establishing a prima facie case of discrimination according to the *McDonnell Douglas* formula—a burden that is "not onerous." *Lewis v. City of Chicago*, 496 F. 3d 645, 650 (7th Cir. 2007); *Coleman v. Donahoe*, 667 F. 3d 835, 846 (7th Cir. 2012). Because Bozek can demonstrate Wal-Mart discriminated against her in both pay and promotion, Wal-Mart's motion must be denied.

### A. Wal-Mart Discriminated Against Bozek by Failing to Pay Her Equally

The first component of Bozek's claim relates to the unequal pay she received. A prima facie case of Title VII disparate pay requires a showing that Bozek: (1) is a member of a protected group; (2) was fulfilling Wal-Mart's legitimate expectations; and (3) suffered an adverse action in that she was paid less than a similarly situated, non-protected individual. *Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 274 (7th Cir. 2004). Wal-Mart does not dispute the first or second elements, (Def. Mem. at 11), and Bozek can easily establish the third.

Bozek earned significantly less than male Assistant Managers, including almost $500 per pay period less than Cole, $400 less than Hilton and Meldrum, $300 less than Rhem, and $200 less than Farmer. There is no rationale for such a discrepancy when Bozek held the same position, with the same job duties, in the same store, and at the same time as each of these males.

In an attempt to justify its unequal treatment, Wal-Mart magnifies minor differences between Bozek and each male, such as the extent of the males' previous work experience, to claim they are not similarly situated to Bozek. However, similarly situated employees need not be identical in every conceivable way, and particularly are not required to be clones of the plaintiff. *Coleman*, 667 F.3d at 846. Instead, the analysis incorporates "a 'flexible, common-sense' examination of all relevant factors." *Id.* (quoting *Henry v. Jones*, 507 F.3d 558, 564 (7th Cir. 2007)). "So long as the distinctions between the plaintiff and the proposed comparators are not so significant that they render the comparison effectively useless, the similarly-situated requirement is satisfied." *Coleman*, 667 F.3d at 846. As the Seventh Circuit has encouraged:

> It is important not to lose sight of the common-sense aspect of this inquiry. **It is not an unyielding, inflexible requirement that requires near one-to-one mapping between employees—distinctions can always be found in particular job duties or performance histories** or the nature of the alleged transgressions . . . . the inquiry simply asks whether there are sufficient commonalities on the key variables between the plaintiff and the would-be comparator to allow the type of

9

comparison that, taken together with the other prima facie evidence, would allow a jury to reach an inference of discrimination or retaliation—recall that the plaintiff need not *prove* anything at this stage.

*Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 405 (7th Cir. 2007), *aff'd,* 553 U.S. 442 (2008)

Bozek's qualifications and work experience is, at minimum, comparable to each male. She had retail and management experience before Wal-Mart at Auchan's and Speedway. Before joining the MIT program, she worked at Wal-Mart for eight years in myriad managerial positions, in various departments, and had a history of positive performance appraisals. She also had post-high school education and a pharmacy certificate. But most importantly, she was working in the same job, with the same pay code, and at the same store as each man. Viewing the evidence in a light most favorable to Bozek shows that there are enough common factors between Bozek and the men to satisfy the similarly-situated requirement. And, to the extent questions remain, whether the individuals are similarly situated is left for the fact finder. *Coleman*, 667 F.3d at 846-847.

Because Bozek is able to prove all three elements of her prima facie case, Wal-Mart must provide a nondiscriminatory reason for its actions. *Farrell v. Butler Univ.*, 421 F. 3d 609, 613 (7th Cir. 2005). If it is able to do so, the burden shifts back to Bozek to demonstrate that the explanation was purely pretext. *Id.* When proving pretext, "once the employee has cast doubt upon the employer's proffered reasons for the termination, the issue of whether the employer discriminated against the plaintiff is to be determined by the jury-not the court." *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 726 (7th Cir. 2005); *see also Gallo v. Advocate Health Care*, No. 01 C 0742, 2002 WL 1160957, at *4 (N.D. Ill. May 23, 2002) (Darrah, J.). Indeed, if there is any question as to the believability of Wal-Mart's reasons for its actions—even if the evidence does not compel the conclusion that Wal-Mart discriminated against Bozek—summary judgment must be denied. *Rudin*, 420 F.3d at 726.

Wal-Mart cannot meet its burden. Its attempts to differentiate the male's pay rates by nitpicking inconsequential details are unavailing. For example, it tries to justify Cole's nearly-$500 higher pay rate by referencing his "exceeds expectations" performance review compared to Bozek's "exceptional performer" rating. Wal-Mart's hollow claims that Cole, Rhem, and Hilton had more experience are simply not supported by the evidence. Wal-Mart provides no justification for the discrepancies between Bozek, Farmer, and Meldrum, but to the extent it claims they had more experience, those claims are, again, unsupported when viewing the evidence as a whole. At bottom, there is simply no legitimate business reason for paying Cole, Rhem, Meldrum, Farmer, and Hilton hundreds of dollars more per pay period for the same work. Therefore, because Bozek has shown that she was paid less than similarly-situated male employees, and Wal-Mart cannot muster a legitimate reason or the disparity, Wal-Mart's motion must be denied.

### B. Wal-Mart Discriminated Against Bozek by Failing to Promote Her

Wal-Mart also discriminated against Bozek by failing to promote her. When a plaintiff uses the indirect method to establish a failure to promote claim, the elements of a prima facie case are slightly altered. *See Jordan v. City of Gary*, 396 F. 3d 825, 832 (7th Cir. 2005). Specifically, the plaintiff must show she (1) is a member of a protected class; (2) was qualified; (3) was rejected for the position; and (4) the position was given to a male who is similarly or less qualified. *Id.*

Most prominent is Wal-Mart's decision to promote Lawrence and McDonald to the Field Project Supervisor position over Bozek. Wal-Mart does not dispute that Bozek is female, qualified, and was rejected for the position, and only contests the fourth element. (Def. Mem. 5.)

As it relates to Lawrence, Bozek had more education and significantly more work

11

experience. To distinguish her superior qualifications, Wal-Mart wrongly claims Lawrence was a TLE supervisor at the time of his application. (Def. Mem. 9.) Lawrence's employment records make clear he was merely an hourly employee in the TLE department. But, even if he had been the TLE supervisor, he still is not more qualified than Bozek. Bozek held numerous supervisory roles at Wal-Mart by this time, including Assistant Manager and Department Manager. The record makes clear that Lawrence was similarly or less qualified than Bozek.

Similarly, Bozek had worked at Wal-Mart six years longer than McDonald. Prior to his promotion to the MIT program, McDonald worked as a stocker, which is a non-management position. At the time she applied for the promotion, Bozek held supervisory responsibilities in the jewelry, sporting goods, stationary, invoicing, photo, and pharmacy departments, and had also worked in the optical department and as a support manager. Bozek was more qualified.

Wal-Mart alleges Bozek is not similarly situated because she stepped down from her Assistant Manager role. However, Wal-Mart does not maintain any policy that employees are somehow disqualified (or are even less qualified) for promotion once they have been demoted. Moreover, such a strict interpretation of the comparator analysis is far more rigid than this Circuit requires. *See generally Coleman*, 667 F.3d at 846. The record shows that each of these males were less qualified than Bozek, and Wal-Mart cannot justify its unequal treatment.

Because Bozek is able to prove her prima facie case, Wal-Mart must articulate a nondiscriminatory reason for selecting Lawrence and McDonald. Other than claiming Bozek, McDonald, and Lawrence are not similarly situated (which, as described above, is refuted by the evidence), it does not provide any nondiscriminatory reason for its decision. Its motion must therefore be denied.

Wal-Mart further discriminated against Bozek by selectively enforcing its promotion

policies. It rejected Bozek for positions for which she was qualified based on its alleged Promotion Guidelines, but did not uniformly abide by those policies. It excused the fact that Elvir had not been in his current store for a year (a requirement for each level of promotion) on two separate occasions. It also claimed Bozek was ineligible for promotion once she received a coaching, although its Promotion Guidelines do not contain any such requirement. It also treated her differently upon her demotion and reduced her pay far more drastically than Cole and Hilton following their involuntary demotions. This conduct directly violates Title VII's prohibitions, and Wal-Mart's motion for summary judgment must be denied.

## CONCLUSION

Bozek is able to set forth competent and sufficient evidence to support her claim of discrimination. By the well-established summary judgment standard requiring all of the evidence to be viewed in the light most favorable to Bozek, and all inferences to be resolved in her favor, there are genuine issues of material fact that preclude summary judgment. For these reasons, Defendant's Motion should be denied.

Date: October 28, 2016      **NICHOLS KASTER, PLLP**

s/Janet M. Olawsky
James H. Kaster* (WI #1001474, MN #53946)
    kaster@nka.com
Matthew H. Morgan* (MN #304657)
    morgan@nka.com
Janet M. Olawsky* (MN #393311)
    jolawsky@nka.com
80 South Eighth Street
4600 IDS Center
Minneapolis, Minnesota 55402-2242
Telephone: (612) 256-3200
Fax: (612) 338-4878
*Admitted pro hac vice

**THE PRINZ LAW FIRM, P.C.**
Kristen Prinz (IL #6291900)
    kprinz@prinz-lawfirm.com
Poonam Lakhani (IL #6306318)
    plakhani@prinz-lawfirm.com
One East Wacker
Suite 550
Chicago, Illinois 60601
Telephone: (312) 212-4450
Fax: (312) 284-4822


**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

The undersigned certifies that on October 28, 2016, she electronically filed the forgoing **Plaintiff's Motion in Opposition to Defendant's Motion for Summary Judgment.** Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

s/Janet M. Olawsky
Janet M. Olawsky
NICHOLS KASTER, PLLP
